ROB HENNIG (STATE BAR NO. 174646)
SHOSHEE HUI (STATE BAR NO. 311866)
DAT TOMMY PHAN (STATE BAR NO. 316813)
HENNIG RUIZ & SINGH
3600 WILSHIRE BLVD., SUITE 1908
LOS ANGELES, CA 90010
TELEPHONE: (213) 310-8301
FAX: (213) 310-8302
ROB@EMPLOYMENTATTORNEYLA.COM

Attorneys for Plaintiff/Relator ARTHUR AFIONYAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICAN, *ex rel*. ARTHUR AFIONYAN, and STATE OF CALIFORNIA, *ex rel*. AFIONYAN<br><br>Plaintiff/Relator,<br><br>v.<br><br>PEDORTHIC LAB SPECIALIST CUSTOM SHOW CO,<br><br>Defendant. | **Case No. CV 16-03268-JFW (KSx)**<br><br>**RELATOR'S OPPOSITION TO DEFENDANT PLS DIABETIC SHOE COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPORT THEREOF**<br><br>Date:          May 14, 2018<br>Time:          1:30 p.m.<br>Judge:          Hon. John F. Walker<br>Courtroom:          7A<br><br>Pre-Trial<br>Conference Date: May 25, 2018<br>Trial Date:          June 12, 2018 |

HENNIG
RUIZ &
SINGH

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I.    INTRODUCTION.................................................................................2

II.   STATEMENT OF FACTS ................................................................3

III.  LEGAL STANDARD ........................................................................5
      A. Rule 12(c): Judgment on the Pleadings......................................5
      B. Rule 9(b): Heightened Standard of Pleading Applies to FCA Claims.........6
      C. Rule 15(a): Amendments Before Trial .......................................7

IV.   ARGUMENT .....................................................................................7
      A. Defendant's Motion for Judgment on the Pleadings at This Late Stage in Litigation Will Delay Trial..............................................................7
      B. Plaintiff's Complaint Sufficiently Satisfies the Heightened Pleading Standard Under Fed. R. Civ. P. 9(b).................................................8
            1. Relator Alleges with Particularity How Defendant PLS Caused to be Presented False or Fraudulent Claims to the Government of the United States and State of California by Marketing and Selling Non-Customized Insoles and Non-Custom-Molded Shoes to Doctor's Offices that Serve Diabetic Patients Receiving Medicare and Medicaid. .......................................................................................9
            2. Relator Alleges with Particularity How Defendant PLS Marketing and Sale of Non-Customized Insoles and Non-Custom-Molded Shoes to Doctor's Offices that Serve Diabetic Patients Receiving Medicare and Medicaid Obtains Fraudulently Reimbursements from the Governments of the United States and State of California .................13
            3. Relator Alleges with Particularity How Defendant PLS Knowingly, or Recklessly or with Deliberate Ignorance Marketed and Sold Non-Customized Insoles and Non-Custom-Molded Shoes to Doctor's Offices that Serve Diabetic Patients Receiving Medicare and Medicaid. .......................................................................................17
      C. To the Extent That Complaint Does Not Currently Satisfy the Heightened Pleading Standard, Relator Should Be Granted Leave of Court to Amend....19
      D. Defendant is Not Entitled to Attorneys' Fees and Costs ...........21
      E. The Court Should Strike the Declaration of Edgar Matirosyan as a Matter Outside of the Pleading ................................................................23

V.    CONCLUSION .................................................................................23

HENNIG
RUIZ &
SINGH

i

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Abrego Abrego v. The Dow Chem. Co*., 443 F.3d 676 (9th Cir.2006) ................... 5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................... 6

*Bly–Magee v. California*, 236 F.3d 1014 (9th Cir.2001) ............................ 7, 11, 19

*Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc*., 637 F.3d 1047 (9th Cir. 2011) ................................................................... 20, 22

*Concha v. London*, 62 F.3d 1493 (9th Cir. 1995) ............................................ 14, 16

*Cooper v. Pickett*, 137 F.3d 616 (9th Cir. 1997) ..................................................... 7

*Dent v. Cox Communications Las Vegas, Inc.,* 502 F.3d 1141 (9th Cir. 2007) ............................................................................................................... 5

*Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188 (9th Cir. 1989) ...................... 5

*Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993 (9th Cir. 2010) 6, 7, 13, 14, 16, 19

*Erickson v. Pardus*, 551 U.S. 89 (2007) .................................................................. 6

*Fleming v. Pickard*, 581 F.3d 922 (9th Cir. 2009) .................................................. 5

*Int'l Bhd. of Carpenters & Joiners of Am., AFL-CIO, Local Union No. 217 v. G.E. Chen Constr.,* 136 Fed. Appx. 36, 2005 U.S. App. LEXIS 10076, *1 (9th Cir. 2005) ..................................................................... 22

*Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531 (9th Cir. 1989) ............. 14, 16

*Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074 (9th Cir. 1990). ................................................................................................................... 7

*Parrino v. FHP, Inc.*, 146 F.3d 699 (9th Cir.1998) ................................................. 5

*Patton v. County of Kings,* 857 F.2d 1379 (9th Cir. 1988) ................................... 22

*Pfingston v. Ronan Eng'g Co.,* 284 F.3d 999 (9th Cir. 2002) ........................ 21, 22

*Prather v. AT&T, Inc.,* 2014 U.S. Dist. LEXIS 17550, 2014 WL 555133, at *1 (N.D. Cal Feb. 10, 2014) ................................................... 21

*Sanford v. MemberWorks, Inc.*, 625 F.3d 550 (9th Cir. 2010) ............................. 14

*Shroyer v. New Cingular Wireless Servs. Inc.*, 622 F.3d 1035 (9th Cir. 2010) ............................................................................................................... 6

*U.S. ex rel. Hendow v. University of Phoenix,* 461 F.3d 1166 (9th Cir. 2006) ...................................................................................................... 9, 17, 19

*U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261 (9th Cir. 1996) .................................. 9

*U.S. ex rel. Vatan v. QTC Medical Services, Inc.* 2018 WL 387286, *1 (9th Cir. 2018) ...................................................................... 10, 11, 14, 16, 17

*United States ex rel. Campie v. Gilead Sciences, Inc.*, 862 F.3d 890 (9th Cir. 2017) ........................................................................................... 18

*United States ex rel. Grubbs v. Ravikumar Kanneganti*, 565 F.3d 180 (5th Cir. 2009) ............................................................................................. 7

*United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770 (7th Cir. 2016) ..................................................................... 14

*United States ex rel. Winter v. Gardens Reg'l Hosp. & Med. Ctr., Inc.,*

ii

HENNIG
RUIZ &
SINGH

2018 U.S. Dist. LEXIS 21850, *1 (C.D. Cal 2018) ....................................21, 22

*United States v. Corinthian Colleges*, 655 F.3d 984 (9th Cir. 2011) ...........6, 7, 19

*United States v. Neifert-White Co.*, 390 U.S. 228, 88 S.Ct. 959 (1968) ................9

*United States v. Science Applications Int'l Corp.*, 626 F.3d 1257 (D.C. Cir. 2010).........................................................................................................13

*United States v. United Healthcare Insurance Company*, 848 F.3d 1161 (9th Cir. 2016) ......................................................................6, 7, 9, 11, 20

*Universal Health Servs., Inc. v. United States (Escobar)*, 136 S.Ct. 1989 (2016)..................................................................................9, 10, 13, 17

*Vernon v. City of Los Angeles,* 27 F.3d 1385 (9th Cir. 1994) ..............................22

*Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003)..................6, 7, 19

*Warren v. City of Carlsbad,* 58 F.3d 439 (9th Cir. 1995) ....................................21

## STATUTES

31 U.S.C. § 3729 *et seq.* ..........................................................2, 5, 8, 9, 11, 17

42 U.S.C. § 1395y(a)(8) ................................................................................4, 10, 11

Cal. Gov. Code § 12650 *et seq.* .............................................................................2, 5

## RULES

Fed. R. Civ. P. 12(b)(6) ................................................................................5, 8, 23

Fed. R. Civ. P. 12(c) ................................................................................3, 5, 8, 23

Fed. R. Civ. P. 15(a)(2)..............................................................................................7

Fed. R. Civ. P. 56..................................................................................................23

Fed. R. Civ. P. 8(a)(2)..............................................................................................6

Fed. R. Civ. P. 9(b) ........................................................2, 6, 7, 8, 11, 13, 16

iii

HENNIG
RUIZ &
SINGH

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3
4
5
6
7
8
9
10

Plaintiff/Relator Arthur Afionyan ("Plaintiff" or "Relator"), an individual, brings this action on behalf of himself, the United States of America, and the State of California under federal and state False Claims Act statutes. Plaintiff/Relator, Arthur Afionyan, an individual, on behalf of the United States of America, seeks to recover damages and civil penalties against PLS Diabetic Shoe Co. ("Defendant" or "PLS") pursuant to the Federal Civil False Claims Act. Title 31 U.S.C. § 3729 *et seq.*, ("FCA") and on behalf of the State of California under the parallel California False Claims Act (Cal. Gov. Code § 12650 *et seq.*) ("CFCA")

11
12
13
14
15
16
17
18

Although the Complaint was originally filed under seal, the United States notified Relator of its decision not to intervene and stipulated to allow Relator to proceed on his own or about July 31, 2017. Deciding to do so, Relator served Defendant with the Complaint on or about August 30, 2017. Defendant filed an Answer on or October 12, 2017. Since then, both parties have engaged in discovery up until the discovery cut-off date on April 12, 2018. Trial is set for June 12, 2018. Defendant filed this Motion for Judgment on the Pleadings ("Motion" or "MJP") on April 9, 2018.

19
20
21
22
23
24
25
26
27

The Court should deny Defendant's Motion for several reasons: (1) despite having notice of Relator's Complaint since August 2017, Defendant waited until the final stages of litigation to file this Motion, which will delay trial; (2) Relator has more than adequately plead specific allegations of fraud with particularity as to answer the questions of who, what, when, where, and how the misconduct charged for each element of the FCA and CFCA, provide PLS with sufficient notice, and satisfy the heightened pleading standard under Fed. R. Civ. P. 9(b); and (3) to the extent that any deficiencies exist in the Complaint, it could easily be cured by an amendment.

28

HENNIG
RUIZ &
SINGH

2

Moreover, Defendant's request for attorneys' fees and cost should be denied because it improperly asks the Court to consider extrinsic evidence, namely the Declaration of Edgar Matirosyan, a matter outside of the pleadings and not properly before the Court in a Motion under Fed. R. Civ. P. 12(c). The Declaration should be stricken. The Court should deny both Defendant's Motion for Judgment on the Pleadings and request for fees and costs in its entirety.

## II.    STATEMENT OF FACTS

The original action was filed under seal on May 12, 2016.  (Dkt. No. 1) On or about March 22, 2017, the United States notified Relator of its decision to decline intervention.  (Dkt. No. 11) On or about July 31, 2017, the Court stipulated to allow Relator to proceed on his own.  (Dkt. No. 16).  Deciding to do so, Relator served the Complaint on PLS on or about August 30, 2017 (Dkt. No.21). On October 11, 2017 PLS filed an Answer. (Dkt. No. 22).  The discovery cut-off was April 12, 2018. Trial is set for June 12, 2018.

Relator Arthur Afionyan alleges that he gained first-hand knowledge of the facts alleged in his Complaint during his employment with PLS.  *See* Complaint at ¶ 4.  PLS is headquartered at 21500 Osborne St., Canoga Park, California. PLS manufactures and sells medical devices.  *Id*. at ¶ 5.  PLS employs approximately 27 persons and markets its products to over 50 medical device suppliers in California and other states.  *Id*. at ¶ 6.  For 2015, PLS had annual sales of approximately three million dollars.  *Id*. at ¶ 7.

Since its founding in 1997, PLS has marketed and sold several products it represents as being custom manufactured for individual diabetic patients.  *Id*. at ¶ 8. These products, when properly produced, greatly reduce the risk of diabetes-related ulcers in the feet and the risk of amputation.  *Id*.  In reality, PLS, in nearly 90% of its sales, does not customize its products and instead takes crude measurements of two dimensional scans of patients' feet and uses those measurements to match the

3

HENNIG
RUIZ &
SINGH

patient with pre-fabricated molds and/or pre-made insoles to create products that do not offer the medical benefits of an individually customized insole protecting a diabetic foot. *Id.* PLS distributes its products to doctor's offices–using them as middlemen–who then supply the devices to patients and bill Medicare. *Id.* PLS represents to its customers that its products comply with all the Federal and State guidelines. *Id.* When the medical offices receive their reimbursements from federal tax dollars, they then pay Defendant. *Id.* As a result, Defendant has received millions of dollars of Medicare and Medicaid money and deceived thousands of diabetic patients who believe they were receiving custom footwear to reduce risk of ulcers and amputation and, instead, receive an inferior and fraudulent product. *Id.* Even more disturbing, thousands of patients are unaware that they remain at increased risk of ulcers and amputation through continued use of Defendant's products. *Id.*

Relator alleges that Medicare will cover therapeutic shoes along with inserts for individuals with diabetes provided that the shoes are custom molded shoes, depth shoes, or inserts. *Id.* at ¶11. To be fully reimbursable through Medicare, the need for diabetic shoes must be certified by a physician." *Id.* at ¶ 18. PLS's employees help take orders for purportedly customized orthotic products, send products, take crude measurements of the size of scanned feet using a ruler, match the measurements against the molds already maintained in the bank, and sell customers two dimensional scanners at vastly inflated prices." *Id.* at ¶¶ 22-23, 28. Federal statutes and regulations restrict the uses for which the federal government will pay for approve devices—even an approved device may not be paid for if used for an improper indication. *Id.* at ¶ 34. Relator alleges that 42 U.S.C. § 1395y(a)(8)[1] makes it clear that "no payment may be made under part A or part B for any expenses incurred for items or services [listed]." *Id.* at ¶ 37. Section 8 identifies where such expenses are for orthopedic shoes or other supportive devices

---

[1] 42 U.S. Code § 1395y - Exclusions from coverage and Medicare as secondary payer

OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

HENNIG
RUIZ &
SINGH

for the feet.[2]  *Id.*  And that in order to bill Medicare, the podiatrist or other qualified health care provider who orders and fits the therapeutic shoes and insoles must enter the appropriate "A" code for billing purposes. All submissions to Medicare for reimbursement for [billing code] A5513 insoles are required to have documentation describing the custom fabrication process.  *Id.*

Relator alleges that Defendant violated both the Federal False Claims Act, 31 U.S.C. § 3729, et seq. and the California False Claims Act (Cal. Gov. Code § 12650 et seq.).  *Id.* at ¶¶ 59-73.  Specifically, Relator alleges that Defendant had "actual knowledge of the false information," "act[ed] in deliberate ignorance of the truth or falsity of the information" or "acted in reckless disregard of the truth or falsity of the information," *Id.* at ¶ 46.

## III.   LEGAL STANDARD

### A.      Rule 12(c): Judgment on the Pleadings

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is "functionally identical" to a motion to dismiss under Fed. R. Civ. P. 12(b)(6), and the same legal standards apply.  *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).  As is true on a motion to dismiss, the court may consider not only the facts alleged in the complaint and documents attached thereto, but also documents relied upon in the complaint and matters of which the court takes judicial notice.  *See, e.g., Dent v. Cox Communications Las Vegas, Inc.,* 502 F.3d 1141, 1143 (9th Cir. 2007) (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 & n. 4 (9th Cir.1998), *superseded by statute on other grounds as stated in Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir.2006)). Moreover, *all inferences reasonably drawn* from these facts must be construed in favor of the responding party. *See Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

---

[2] 42 U.S. Code § 1395y(a) – Notwithstanding any other provision of this subchapter, no payment may be made under part A or part B for any expenses incurred for items or services . . . (8) where such expenses are for orthopedic shoes or other supportive devices for the feet, other than shoes furnished pursuant to section 1395x(s)(12) of this title.

HENNIG
RUIZ &
SINGH

**B.     Rule 9(b): Heightened Standard of Pleading Applies to FCA Claims**

Federal pleading rules call for a "short and plain statement of the claim showing that pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court must "accept as true all of the factual allegations contained in the complaint", construing the pleadings in the light most favorable to Plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court may dismiss claims "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs. Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). Plaintiff must provide "sufficient factual matter, accepted as true, allowing a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Claims under the False Claims Act are also subject to Rule 9(b). *United States v. United Healthcare Insurance Company*, 848 F.3d 1161, 1180 (9th Cir. 2016). Under Fed. R. Civ. P. 9(b), a plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This means the plaintiff must allege "the who, what, when, where, and how of the misconduct charged," *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (quoting *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)), including what is false or misleading about a statement, and why it is false. *Id*. Knowledge, however, may be pled generally. *United States v. Corinthian Colleges*, 655 F.3d 984, 996 (9th Cir. 2011).

"Allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so they can defend against the charge and not just deny that they have done anything wrong." *United Healthcare Ins.*, 848 F.3d at 1180 (internal quotation marks omitted). The standard "does not need allege a precise time frame, describe in

1  detail a single specific transaction or identify the precise method used to carry out

2  the fraud." *Id.* (citation and internal quotation marks omitted) (quoting *Cooper v.*

3  *Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). The complaint also need not "identify

4  representative examples of false claims to support every allegation." *Ebeid*, 616

5  F.3d at 998. "[I]t is sufficient to allege 'particular details of a scheme to submit

6  false claims paired with reliable indicia that lead to a strong inference that claims

7  were actually submitted." *Id.* at 998–99 (internal quotation marks omitted) (quoting

8  *United States ex rel. Grubbs v. Ravikumar Kanneganti*, 565 F.3d 180, 190 (5th Cir.

9  2009)).

10

11      **C.      Rule 15(a): Amendments Before Trial**

12      A court should "freely give leave [to amend] when justice so requires," Fed.

13  R. Civ. P. 15(a)(2), a policy "to be applied with extreme liberality." *Morongo Band*

14  *of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).  Where a

15  plaintiff's fraud allegations are dismissed under Rule 12(b)(6) or for failure to

16  comply with Rule 9(b)'s heightened pleading standard, Courts have consistently

17  held that "[l]eave to amend should be granted if it appears at all possible that the

18  plaintiff can correct the defect." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097,

19  1108 (9th Cir.2003) (citation and internal quotation marks omitted) (quoting *Bly–*

20  *Magee v. California*, 236 F.3d 1014, 1019 (9th Cir.2001)).  Additionally, "[u]nder

21  futility analysis, '[d]ismissal without leave to amend is improper unless it is clear . .

22  . that the complaint could not be saved by any amendment." *Corinthian Colleges*,

23  655 F.3d at 995; *See United Healthcare Ins. Co.*, 848 F.3d at 1183 (reversing denial

24  of leave to amend even though the plaintiff had previously amended his pleading

25  three times).

26

27  **IV.    ARGUMENT**

28      **A.     Defendant's Motion for Judgment on the Pleadings at This Late
            Stage in Litigation Will Delay Trial**

The Federal Rules are very clear that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Rather than prepare this Motion for Judgement on the Pleadings shortly after pleadings closed in October 2017 or raise these issues during the last six months of discovery, Defendant waited until the close of discovery and just two months before the start of trial on June 12, 2018 to file this Motion. Defendant's dilatory conduct risks delaying trial and, therefore, the Court should deny Defendant's Motion in its entirety.

Relator's action was originally filed under seal on May 12, 2016. On or about March 22, 2017, the United States notified Relator of its decision to decline intervention.  (Dkt. No. 11) On or about July 31, 2017, the Court stipulated to allow Relator to proceed on his own.  (Dkt. No. 16).  Relator served the Complaint on Defendant on or about August 30, 2017. Defendant had notice of Relator's Complaint as late as that date, but did not file a Rule 12(b)(6) Motion to Dismiss, opting instead to file an Answer on or about October 11, 2017. Since then, Relator has conducted discovery diligently for nearly half a year until the discovery cutoff of April 12, 2018, in preparation for the start of trial on June 12, 2018.  Rather than raise the issues with Relator month earlier, Defendant chose to wait and file this Motion for Judgment on the Pleadings at a very late stage in the litigation—raising issues that could and should have been raised months ago—contravening the text and spirit of Rule 12(c) and threatening to cause delay of trial. To avoid any further delays, the Court should deny Defendant's Motion in its entirety.

### B. Plaintiff's Complaint Sufficiently Satisfies the Heightened Pleading Standard Under Fed. R. Civ. P. 9(b)

The False Claims Act makes liable anyone who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim."  31 U.S.C. § 3729(a)(1)(A), (B).  A "claim"

8

includes direct requests for government payment as well as reimbursement requests made to the recipients of federal funds under a federal benefits program.  31 U.S.C. § 3729(b)(2)(A); *Universal Health Servs., Inc. v. United States (Escobar)*, 136 S.Ct. 1989, 1996 (2016). A claim under the False Claims Act requires a showing of "(1) a false statement or fraudulent course of conduct, (2) made with the scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *U.S. ex rel. Hendow v. University of Phoenix,* 461 F.3d 1166, 1174 (9th Cir. 2006).  We construe the Act broadly, as it is "intended to reach all types of fraud, without qualification, that might result in financial loss to the Government." *Id.* at 1170 (quoting *United States v. Neifert-White Co.*, 390 U.S. 228, 232, 88 S.Ct. 959 (1968)).

Defendant contests that Relator has failed to allege with particularity the elements of: false statement or fraudulent course of conduct, materiality, and that the government paid out money or forfeited moneys due. As will be discussed below, Relator has more than adequately plead specific allegations of fraud as a whole to answer the question of "who, what, when, where, and how of the misconduct charged" for each element of the False Claims Act and give Defendant "notice of the particular misconduct which is alleged to constitute the fraud charged." *United States v. United Healthcare Insurance Company*, 848 F.3d 1161, 1180-1081 (9th Cir. 2016). Therefore, Defendant's Motion should be dismissed.

> **1.     Relator Alleges with Particularity How Defendant PLS Caused to be Presented False or Fraudulent Claims to the Government of the United States and State of California by Marketing and Selling Non-Customized Insoles and Non-Custom-Molded Shoes to Doctor's Offices that Serve Diabetic Patients Receiving Medicare and Medicaid.**

The first requirement of a False Claims Act claim is a false claim. *U.S. ex rel. Hendow v. University of Phoenix*, 461 F.3d 1166, 1171 (9th Cir. 2006); *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996) ("Violations of laws, rules, or regulations alone do not create a cause of action. It is the false certification of

9

HENNIG
RUIZ &
SINGH

compliance which creates liability when certification is a prerequisite to obtaining a government benefit."). The false certification can be factual or implied. *See U.S. ex rel. Vatan v. QTC Medical Services, Inc*. 2018 WL 387286, *1, *2 (9th Cir. 2018) ("[Relator] has alleged the requisite elements of False Claims Act claims under theories of both factually false and implied false certification"); *Universal Health Services, Inc. v. U.S.*, 136 S.Ct. 1989, 1993-94 (2016) ("The implied false certification theory can be a basis for FCA liability when a defendant submitting a claim makes specific representations about the goods or services provided, but fails to disclose noncompliance with material statutory, regulatory, or contractual requirements that make those representations misleading with respect to those goods or services.").

Here, Relator has adequately satisfied the falsity requirement under both theories of false certification, either that that Defendant made false statements to its medical suppliers about its fraudulently customized products or at the least certifies to its medical device suppliers that its product comply with federal Medicare statutes and thereby provides for reimbursements from the government. Relator indicated that Defendant PLS is in the business of manufacturing and selling medical devices to medical device suppliers in California and other states, which Defendant readily admits.  Complaint at ¶¶ 5-6; Answer at ¶¶ 5-8.  Relator explains that "to be fully reimbursable through Medicare, the need for diabetic shoes must be certified by a physician."  Complaint at ¶ 18.  Moreover, 42 U.S.C. § 1395y(a)(8) [3] makes it clear that "no payment may be made under part A or part B for any expenses incurred for items or services [listed]."  *Id*. at ¶ 37.  This applies specifically to Section 8, "where such expenses are for orthopedic shoes or other supportive devices for the feet." [4]  *Id*.  Consequently, for physicians to be

---

[3] 42 U.S. Code § 1395y - Exclusions from coverage and Medicare as secondary payer
[4] 42 U.S. Code § 1395y(a) – Notwithstanding any other provision of this subchapter, no payment may be made under part A or part B for any expenses incurred for items or services . . . (8) where such expenses are for orthopedic shoes or other supportive devices for the feet, other than shoes furnished pursuant to section 1395x(s)(12) of this title.

10

HENNIG
RUIZ &
SINGH

reimbursed for providing Medicare patients with customized diabetic shoes or inserts, they must first certify that "therapeutic shoes along with inserts for individuals with diabetes provided. . . are custom molded shoes, depth shoes or inserts." *Id*. at ¶ 11.  Relator explains that "when not custom made, these devices are not reimbursable under federal and state law." *Id*. at 9.  In alleging that Defendant had "actual knowledge of the [false] information," "act[ed] in deliberate ignorance of the truth or falsity of the information" or "acted in reckless disregard of the truth or falsity of the information," *Id*. at ¶ 46, Relator has satisfied the heightened pleading standard with respect to alleging either that Defendant made false statements to its medical suppliers about its fraudulently customized products or at the least certifies to its medical device suppliers that its products comply with 42 U.S.C. § 1395y(a)(8) to provide for proper Medicare reimbursements.

In *United States ex rel. Vatan v. QTC Medical Services, Inc.*, the Ninth Circuit reversed a district court's dismissal of fraud claims from a plaintiff's second amended complaint and its denial of leave to amend that complaint.  2018 WL 387286, *1, *2 (9th Cir. 2018).  Plaintiff had alleged that "defendants presented false or fraudulent claims for payment in violation of 31 U.S.C. § 3729(a)(1)(B), and made, used or cause to be made or used false records material to false or fraudulent claims, in violation of § 3729(a)(1)(B).  *Id*. at *1.  The Court found that relator's complaint met the Rule 9(b) heightened pleading standard by alleging the "who, what, when, where, and how of the conduct charged, including what is false or misleading . . . and why it is false."  *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (citation and internal quotation marks omitted).  And that the allegations were "specific enough to give defendant's notice of the particular alleged misconduct . . . so that they can defend against the charge."  *Id*. (quoting *Bly-Magee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001)).  *Vatan*, 2018 WL 387286 at *2.

Although Relator did not specify the names of individuals *who* perpetrated

11

the alleged fraud at the time he filed his Complaint, he provided Defendant with ample notice of the wrongdoer's identity considering that the company had approximately 27 employees.  Complaint at ¶ 8.  Those perpetrators of the fraud include those employees who helped PLS "take orders for purportedly customized orthotic products," "send [Medical providers] products," "take crude measurements of the size of scanned feet using a ruler," "matche[d] the measurements against the molds already maintained in the [mold] bank" and "s[old] its customers two dimensional scanners at vastly inflated prices."  *Id.* at ¶ 22-23, 28.  While Defendant may feign ignorance of the exact names of individual in the 27 employee company, these allegations taken in the context of the Complaint as a whole makes it quite clear that the company's entire business model was predicated on fraud.

Defendant claims that Relator lacks direct and independent knowledge of the information on which his allegations are based.  PLS MJP at 14:4-16.  As explained, Relator acquired his insider knowledge during the period of his employment with Defendant.  Complaint at ¶ 4.  Relator has alleged significant details as to *what* and *how* Defendant conducts its fraudulent activities: selling pre-fabricated molds and/or pre-made insoles that do not comply with federal and state Medicare statues to middlemen medical officers and receiving payment from those medical offices that get Medicare reimbursements from the government.  *Id.* at ¶ 8.  For example, PLS "takes crude measurements of two-dimension scans of patients' feet and uses those measurements to match the patient with pre-fabricated molds and/or pre-made insoles to create products that do not offer the medical benefits of an individually customized insole protecting a diabetic foot."  *Id.*  The *where* is from Defendant's headquarters at 21500 Osborne St., Canoga Park, California and the *when* is at least during the period of his employment, though it may extend as far back as 1997, when the company was founded.  *Id.* at ¶¶ 5, 7.  The allegations as plead in the Complaint sufficiently answer the questions of who, what, when, where, and how with particularity and give Defendant specific notice of the alleged misconduct

12

HENNIG
RUIZ &
SINGH

1    made against Defendant. Moreover, the Supreme Court has added that "[i]nstead of
2    adopting a circumscribed view of what it means for a claim to be false or
3    fraudulent, concerns about fair notice and open-ended liability can be effectively
4    addressed through strict enforcement of the Act's materiality and scienter
5    requirements. *Universal Health Servs., Inc. v. United States (Escobar)*, 136 S.Ct.
6    1989, 2002 (2016) (quoting *United States v. Science Applications Int'l Corp.*, 626
7    F.3d 1257, 1270 (D.C. Cir. 2010)).

8        Therefore, in assuming that all the material facts in Relator's pleading as true
9    and drawing all reasonable inferences in favor of the responding party, Relator has
10   alleged sufficient facts with particularity to satisfy the Rule 9(b) heightened
11   standard of pleadings for fraud claims. Defendant's Motion should be dismissed.

**2.    Relator Alleges with Particularity How Defendant PLS
Marketing and Sale of Non-Customized Insoles and Non-
Custom-Molded Shoes to Doctor's Offices that Serve
Diabetic Patients Receiving Medicare and Medicaid Obtains
Fraudulently Reimbursements from the Governments of the
United States and State of California**

16       Relator sufficiently pleads with particularity how PLS distributes its
17   fraudulent products to medical offices—using them as middlemen—who then
18   supply the devices to patients and bill Medicare.  Complaint at ¶ 8.  While Relator
19   may not be directly requesting payment from the federal and state government, it is
20   effectively seeking reimbursements from medical offices, which are billing the
21   government on behalf of diabetic patients and receiving Medicare and Medicaid
22   dollars.  *Id.  See Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136
23   S.Ct. 1989, 1996 (2016) ("[a] 'claim' now includes direct requests to the
24   Government for payment as well as reimbursement requests made to the recipients
25   of federal funds under federal benefits programs.")

26       The Ninth Circuit has offered significant guidance on how to determine if the
27   government is asked "to pay out money or forfeit moneys due."  In *Ebeid ex rel.
28   U.S. v. Lungwitz*, the Court stated that the "use of representative examples is simply

13

HENNIG
RUIZ &
SINGH

1   one means of meeting the pleading obligation." 616 F.3d 993, 998 (9th Cir. 2010).

2   And that it was "sufficient to allege particular details of a scheme to submit false

3   claims paired with reliable indicia that leads to a strong inference that claims were

4   actually submitted." *Id.* at 998-99. In *U.S. ex rel. Vatan v. QTC Medical Services,*

5   *Inc.*, the Court reversed a district court's dismissal of fraud claims for failure to

6   state a claim under Fed. R. Civ. P. 8(a) and 9(b). 2018 WL 387286 *1, *2 (9th Cir.

7   2018). The Court further elaborated that the relator had satisfied the Rule 9(b)'s

8   heightened pleading standard because:

9          [Plaintiff]'s second amended complaint pleads the
           contents of that contract pursuant to information and
10         belief and adduces the factual basis for that belief. Where,
           as here, the relevant information is within the defendant's
11         exclusive possession and control, such pleading is
           sufficient to satisfy Rule 9(b)'s particularity requirement.
12         *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540
           (9th Cir. 1989) (affirming that Rule 9(b)'s particularity
13         requirements "may be relaxed as to matters within the
           opposing party's knowledge"); *Concha v. London*, 62
14         F.3d 1493, 1503 (9th Cir. 1995) ("Rule 9(b) ... requires
           that plaintiffs specifically plead those facts surrounding
15         alleged acts of fraud to *which they can reasonably be*
           *expected to have access*" (emphasis added)); *Sanford v.*
16         *MemberWorks, Inc.*, 625 F.3d 550, 558-59 (9th Cir. 2010)
           (requiring particularity only where "it is not unreasonable
17         to expect ... personal knowledge of the relevant facts").
           The district court's requirement to the contrary would
18         vitiate the False Claims Act, by excluding many whistle-
           blowers who—as here—allege insider knowledge of
19         wrongdoing that few others would be positioned to reveal
           and solely lack access to the corporate documents
20         outlining the precise nature of the company's obligations.
           *See United States ex rel. Presser v. Acacia Mental Health*
21         *Clinic, LLC*, 836 F.3d 770, 778 (7th Cir. 2016).

22   *Vatan*, 2018 WL 387286 at *2. Simply, a relator need only meet a relaxed standard

23   of particularity when the relevant information lies in the exclusive possession and

24   control of defendant.

25          Here, Relator was one of approximately 27 employees working for

26   Defendant PLS, helping the company manufacture, market, and sell its medical

27   devices to suppliers in California and other states. Complaint at ¶¶ 5-6. Through

28   his direct experiences with helping Defendant carry out its activities, Relator gained

14

HENNIG
RUIZ &
SINGH

first-hand knowledge of the facts surrounding Defendant's fraudulent scheme. *Id*.
at ¶ 4.  Relator knew that PLS marketed, sold, and represented its products as being
custom manufactured for individual diabetic patients. *Id*. at ¶ 8.  Relator learned,
during the course of his employment, that PLS does not in fact customize its
product but instead takes crude measurement of two dimension scans of patients'
feet and uses those measurements to match the patient with pre-fabricated molds
and/or pre-made insoles to create products that do not offer the medical benefits of
an individually customized insole protecting a diabetic foot. *Id*.  Relator explains
that while PLS may not bill Medicare or Medicaid directly for its fraudulent and
non-customized products, it chooses instead to distribute its products to doctor's
offices—using them as middlemen—who then supply the devices to patients that
bill Medicare and Medicaid. *Id*.  When these medical offices receive their
reimbursements from the government, they in turn pay back Defendant for its
products. *Id*.  In 2015 alone, Defendant had annual sales of approximately three
million dollars. *Id*. at ¶ 7.  These factual allegations explain, with particularity, how
Defendant maintained a fraudulent business model that causes medical offices to
make reimbursement requests to the government on behalf of Medicare patients as
payment for PLS's fraudulent products.

      Defendant, however, contends that Relator "has not plead any specific
instance of any request or demand for money or property present to the government
for any of the products manufactured by PLS."  PLS MJP at 7:22-25.  Defendant
claims that Relator has not provided *any* particular detail as to how "PLS
orchestrated a scheme under which PLS's customers (Medicare providers) were
billing the government" and merely "speculates that once these [medical] providers
were paid by Medicare they would use that money to pay PLS." *Id*. at 10:17-21.
The Ninth Circuit has made clear that the "use of representative examples is simply
one means of meeting the pleading obligation" and that Rule 9(b) only "requires
that plaintiff specifically plead those facts surrounding alleged acts of fraud to

15

which they can reasonably be expected to have access to. *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010); *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995). In order to meet the particularity requirement, Relator does not need to provide a representative example, but has sufficiently explained sufficient details of the scheme to make reimbursement requests from its medical suppliers with particularity. Complaint at ¶ 8. These allegations were plead at a time before Relator began discovery and were based only on facts that Relator could have reasonably been expected to have access to.

Defendant's Answer specifically admits that it sells its products to these medical suppliers. Answer at ¶¶ 5-6, 8. It admits that its manufactures customer products, including custom diabetic insoles, custom functional orthotics, and heat moldable insoles, for diabetic patients that it markets to over 50 medical devices suppliers in California and other states. *Id*. Defendant admits that it had annual sales of approximately three million dollars in 2015. *Id*. at ¶ 7. It is reasonable to presume then that Defendant makes sales to the same medical device suppliers that it markets its products to. Relator is alleging, essentially, that when these medical device suppliers receive reimbursements from Medicare and Medicaid, they pay Defendant for its fraudulent products with reimbursements from Medicare. Any sales contracts or agreement that provides relevant evidence of these transactions are "within the defendant's exclusive possession and control." *See United States ex rel. Vatan v. QTC Medical Services, Inc.*, 2018 WL 387286, *1 (9th Cir. 2018); *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) (affirming that Rule 9(b)'s particularity requirements "may be relaxed as to matters within the opposing party's knowledge"). Without having had access to these sales contracts or agreements at the time Relator filed his complaint, because they were in PLS's exclusive possession and control, Relator's actions demonstrate sufficient "knowledge of wrongdoing that few others would be positioned to reveal and solely lack access to the corporate documents outlining the precise nature of the nature of

16

HENNIG
RUIZ &
SINGH

the company's obligations." *United States ex rel. Vatan v. QTC Medical Services, Inc.*, 2018 WL 387286, *2 (9th Cir. 2018). Thus, Relator's Complaint has satisfied the heightened pleading standard and alleged with particularity that PLS caused to be presented a false or fraudulent claim to the government.

> **3.   Relator Alleges with Particularity How Defendant PLS Knowingly, or Recklessly or with Deliberate Ignorance Marketed and Sold Non-Customized Insoles and Non-Custom-Molded Shoes to Doctor's Offices that Serve Diabetic Patients Receiving Medicare and Medicaid.**

Relator sufficiently pleads the materiality element of a False Claims Act with particularity by specifically citing to and explaining how PLS's violation of 42 U.S.C. § 1395y(a)(8) expressly precludes reimbursements. Under the False Claims Act, a falsehood is material if it has "a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). The Supreme Court has explained that the materiality turns on a number of factors:

> when evaluating materiality under the False Claims Act, the Government's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive. Likewise, proof of materiality can include, but is not necessarily limited to, evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement. Conversely, if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material. Or, if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material.

*Universal Health Servs., Inc. v. United States (Escobar)*, 136 S.Ct. 1989, 2003-04 (2016).

In *U.S. ex rel. Hendow v. University of Phoenix*, 461 F.3d 1166, 1177-78, (9th Cir. 2006), the Ninth Circuit reversed a district court's grant of a motion to

17

dismiss for a lack of particularity. The Court found that "because the relators had properly alleged that the University fraudulently violated a regulation upon which payment is expressly conditioned . . . the University engaged in statements or courses of conduct that were *material* to the government's decision with regard to funding." *See United States ex rel. Campie v. Gilead Sciences, Inc.*, 862 F.3d 890 (9th Cir. 2017) ("relators allege more than the mere possibility that the government would be entitled to refuse payment if it were aware of the violations. . . sufficiently pleading materiality at this stage of the case.").

Contrary to Defendant's contention that Relator merely pleads in generalized terms that "whatever documentation" provided to Medicare of PLS's customer fabrication process is fraudulent, PLS MJP at 12:3-6, Relator explains with sufficient particularity that Medicare expressly limits payments to any orthopedic shoes to those furnished pursuant to Medicare statute and regulations according to statute, 42 U.S.C. § 1395y(a)(8)." Complaint at ¶ 37. Relator describes how federal statutes and regulations "restrict the uses for which the federal government will pay for approved devises—even an approved device may not be paid for if used for an improper indication." *Id.* at ¶ 34. Relator further explains that "in order to bill Medicare, the podiatrist or other qualified health care provider who orders and fits the therapeutic shoes and insoles must enter the appropriate "A" code for billing purposes." *Id.* at ¶ 38. For example, "all submissions to Medicare for reimbursement for [billing code] A5513 insoles are required to have documentation describing the custom fabrication process." *Id.*

Medicare statute 42 U.S.C. § 1395y(a)(8) makes clear that "no payment may be made under part A or part B for any expenses incurred for items or services [listed]." Complaint at ¶ 37. This applies specifically to Section 8 "where such expenses are for orthopedic shoes or other supportive devices for the feet." *Id.* Just like the fraudulently violated regulation in *Hendow* in which payment was expressly conditioned, reimbursement from the federal government for orthopedic

18

shoes or other supportive devices for the feet is expressly conditioned on complying with the statute.  461 F.3d at 1177-78; Complaint at ¶ 37.  Therefore, in taking the facts alleged in Relator's Complaint as true and drawing all reasonable inferences in favor of Relator, they sufficiently satisfy the heightened pleading standard for materiality by making it clear that if the government knew that PLS was reimbursing doctor's offices for non-customized insoles and non-custom-molded shoes, it would cease reimbursements immediately.

**C.    To the Extent That Complaint Does Not Currently Satisfy the Heightened Pleading Standard, Relator Should Be Granted Leave of Court to Amend**

Although Relator contends that the Complaint as currently plead satisfies the heightened standard for fraud claims, to the extent that any deficiency exists as to Relator's Complaint, Relator believes that such deficiencies could be easily cured by amendment. Where a plaintiff's fraud allegations are dismissed under Rule 12(b)(6) or for failure to comply with Rule 9(b)'s heightened pleading standard, we have consistently held that [l]eave to amend should be granted if it appears at all possible that the plaintiff can correct the defect. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir.2003) (citation and internal quotation marks omitted) (quoting *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir.2001)).

The Ninth Circuit has long held that dismissals for failure to comply with Rule 9(b) should ordinarily be without prejudice. *Vess*, 317 F.3d at 1108. Moreover, "[u]nder futility analysis, '[d]ismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). The cases Defendant cites in support of its position to deny leave to amend arise after relators have had several prior opportunities to amend their complaints, but still failed to do so.  *See Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 1001 (affirming the district court's dismissal of the Second Amended Complaint with

HENNIG
RUIZ &
SINGH

prejudice); *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1057 (9th Cir. 2011) (affirming the district court's grant of a motion for judgment on pleadings after relator sought to file a 733 page second amended complaint). The number of amendments, however, is not determinative. *See United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1183 (9th Cir. 2016) (reversing denial of leave to amend even though the plaintiff had previously amended his pleading three times).

If the Court determines that an amended complaint is needed, Relator would further expand on the factual allegations underlying its Complaint. Relator would allege that he began working for PLS in or around 2009 with job duties that encompassed every step of the process of making PLS's custom diabetic insoles. And that CEO Ambartsum Kumurayan personally explained the company's process of making inserts to him when he started working there; and that it was not until 2011 or 2012 when he received a training from the International School of Pedorthics that he confirmed his suspicions that PLS was taking inappropriate "shortcuts" to save time and money through the use and refuse of templates. Relator would further add that in response to subpoenas, Damar Medical Industries ("DMI") produced documents identifying the names of patients who received custom insoles/orthotics from PLS from January 1, 2012 to present. Among the named patients are Daniel Rodriguez, Janice Vanover, Ramona Lyons, Don Mays, and Martha Pittma, who can all attest to the fact that Kaiser/Medicare was billed to cover the costs of the inserts and/or orthotics they purchased from DMI. This would eviscerate any concerns that Defendant has that Relator "has not plead any specific instance of any request or demand for money or property presented to the government for any of the products manufactured by PLS." MJP at 7:22-25. If the Court finds that great particularity is needed, Relator is readily able to add those allegations to an amended complaint.

Should Relator be provided with the opportunity to amend the Complaint,

20

Relator requests that the parties stipulate to a short continuance of trial to allow further discovery based on the revised pleadings, in light of the recently passed discovery cutoff date of April 12, 2018.

### D.   Defendant is Not Entitled to Attorneys' Fees and Costs

Relator's *qui tam* action against Defendant has been brought in good faith and for non-frivolous reasons, contrary to Defendant's contention. As is already evident in his Complaint, Relator brought this *qui tam* action because he believed that Defendant's ongoing fraudulent business practices had cost the governments of United States and State of California millions of dollars.  Complaint at ¶ 8.  The FCA provides that:

> If the Government does not proceed with the action and the person bringing the action conducts the action, the court may award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment. 31 U.S.C. §3730(d)(4)

"The award of fees under the False Claims Act is reserved for rare and special circumstances." *Pfingston v. Ronan Eng'g Co.,* 284 F.3d 999, 1007 (9th Cir. 2002). "Courts must exercise caution in awarding fees to a prevailing defendant in order to avoid discouraging legitimate suits that may not be airtight." *United States ex rel. Winter v. Gardens Reg'l Hosp. & Med. Ctr., Inc.,* 2018 U.S. Dist. LEXIS 21850, *3 (C.D. Cal 2018) (*quoting Prather v. AT&T, Inc.,* 2014 U.S. Dist. LEXIS 17550, 2014 WL 555133, at *2 (N.D. Cal Feb. 10, 2014) *(citing Warren v. City of Carlsbad,* 58 F.3d 439, 444 (9th Cir. 1995)).  An award of fees is appropriate only if the "action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." 31 U.S.C. § 3730(d)(4). The FCA does not authorize an award of fees against an attorney.  *Pfingston,* 284 F.3d at 1006.

An action is "clearly frivolous" when "the result is obvious or the appellant's

21

1    arguments of error are wholly without merit." *Id.,* (*quoting Vernon v. City of Los*

2    *Angeles,* 27 F.3d 1385, 1402 (9th Cir. 1994)).  An action is "clearly vexatious" or

3    "brought primarily for purposes of harassment" when the plaintiff pursues the

4    litigation with an improper purpose, such as to annoy or embarrass the defendant.

5    *Id.,* (*citing Patton v. County of Kings,* 857 F.2d 1379, 1381 (9th Cir. 1988)).  The

6    Ninth Circuit has held that when a plaintiff is able to establish at least some

7    elements of his claims, the claims are not "clearly frivolous, clearly vexatious, or

8    brought for the primarily for the purposes of harassment." *See Int'l Bhd. of*

9    *Carpenters & Joiners of Am., AFL-CIO, Local Union No. 217 v. G.E. Chen*

10   *Constr.,* 136 Fed. Appx. 36, 38, 2005 U.S. App. LEXIS 10076, *2 (9th Cir. 2005).

11   The standard for an award of fees and expenses is high—even a "minimal basis" for

12   a plaintiff's claims make such an award inappropriate.  *See Winter,* 2018 U.S. Dist.

13   LEXIS 21850, *4-5.  In *Winter,* the court found that an FCA action was not

14   vexatious where the plaintiff stated she brought the action "because she believed

15   that was reporting significant Medicare fraud to the government."  *Id.* at *5-6.

16        An award of fees and expenses is wholly inappropriate in this case.  Relator,

17   like the plaintiff in *Winter,* has brought the instant action because of a genuine and

18   good faith belief that Defendant was defrauding the government and putting

19   diabetic patients at risk of injury and amputation through falsely representing its

20   inserts as "custom" within the meaning of CMS requirements. And even when the

21   Ninth Circuit has affirmed a grant of a motion for judgment on the pleadings to

22   defendants in a qui tam action, it recognizes the threat that awarding fees may have

23   on chilling prospective relators.  *Cafasso, U.S. ex rel. v. General Dynamics C4*

24   *System, Inc.* 637 F.3d 1047, 1062 (9th Cir. 2011) ("We take seriously plaintiff's

25   concern that awarding fees against a qui tam claimant may chill prospective relators

26   from exposing frauds on the government. This consideration generally counsels

27   against a fee award, and courts should not reject such arguments out of hand.").

28        Moreover, because the basis for Defendant's request for fees and costs draw

HENNIG
RUIZ &
SINGH

1   from the Declaration of Edgar Matirosyan, a matters outside the pleadings, it should

2   not be considered by the Court.

3

### E.   The Court Should Strike the Declaration of Edgar Matirosyan as a Matter Outside of the Pleading

5   If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings

6   are presented to and not excluded by the court, the motion must be treated as one

7   for summary judgment under Fed. R. Civ. P. 56. All parties must be given a

8   reasonable opportunity to present all the material that is pertinent to the motion.

9   Here, Defendant improperly attached the Declaration of Edgar Matirosyan

10   with its Motion for Judgment on the Pleadings. By asking the Court to consider the

11   declaration, Defendant seeks to convert Motion under Rule 12(c) to one for

12   summary judgment Rule 56 without providing the parties with proper notice and an

13   opportunity to present all material facts pertinent to the motion. Moreover,

14   Defendant has already filed a motion for summary judgment, simultaneously with

15   this Motion.  (Dkt. No. 31, 37)

16   The contents of Mr. Matirosyan's declaration are inaccurate and do not

17   represent Relator's knowledge or the evidence supporting this *qui tam*. Defendant

18   misstates Relator's deposition and discovery responses, and mischaracterizes

19   discovery disputes between the parties. Relator believes that it would be

20   inappropriate to file a competing declaration because this is a motion on the

21   pleadings, and respectfully requests that the Court should strike Defendant's

22   attached declaration as extrinsic evidence.

23

### V.   CONCLUSION

25   Thus, for all the forgoing reasons, Defendant's Motion and request for

26   attorneys' fees and costs must be denied in its entirety. In the event that the Court is

27   inclined to grant Defendant's motion, Plaintiff respectfully requests leave be

28   granted to file an amended complaint.

HENNIG
RUIZ &
SINGH

1

2     Dated: April 23, 2018          HENNIG RUIZ & SINGH

3

4                          By:    /s/ Dat Tommy Phan
                                  Rob Hennig
5                                 Shoshee Hui
                                  Dat Tommy Phan
6
                                  Attorneys for Plaintiff/Relator
7                                 ARTHUR AFIONYAN

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HENNIG
RUIZ &
SINGH