1   Edgar Martirosyan SBN 260250
2   Email:       em@mpclegal.com
    MARTIROSYAN P.C.
3   15720 Ventura Blvd., Suite 229
    Encino, CA 91436
4   Telephone:   (818) 528-8700
    Facsimile:   (818) 528-8704
5
    Attorney for Defendant,
6   PLS DIABETIC SHOE COMPANY
7
8                 IN THE UNITED STATES DISTRICT COURT
9               FOR THE CENTRAL DISTRICT OF CALIFORNIA
10
11  UNITED STATES OF AMERICA          )   Case No: CV 16-03268-JFW (KSx)
    ex rel. ARTHUR AFIONYAN, and      )
12  STATE OF CALIFORNIA ex rel.       )   **PLS DIABETIC SHOE COMPANY'S**
    AFIONYAN                          )   **REPLY IN SUPPORT OF NOTICE OF**
13                                    )   **MOTION AND MOTION FOR**
                 Plaintiffs,          )   **SUMMARY JUDGMENT**
14                                    )
        vs.                           )   [Filed concurrently with Combined
15                                    )   Statements of Facts and Laws; Evidentiary
    PEDORTHIC LAB SPECIALIST          )   Objections to Relator's Opposition;
16  CUSTOM SHOE CO.                   )   Declaration of Konstandin Kumuryan;
                                      )   Declaration of Minerva Rodriguez;
17  Defendant.                        )   Supplemental Declaration of Edgar
                                      )   Martirosyan; Supplemental Declaration of
18                                    )   Ambartsum Kumuryan; Relevant Portions of
                                      )   Deposition of Ambartsum Kumuryan,
19                                    )   Volumes I and II]
                                      )
20                                    )
                                      )
21                                    )
                                      )
22                                    )   Date:   May 14, 2018
                                      )   Time:   1:30 p.m.
23                                    )   Judge:  Hon. John F. Walter
                                      )   Courtroom: 7A
24                                    )
                                      )   Pre-Trial Conference Date: 5/25/18
25                                    )   Trial Date: 6/12/18
                                      )
26  _____  )
27
28

**PLS DIABETIC SHOE COMPANY'S REPLY IN SUPPORT OF NOTICE OF MOTION
AND MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Page

I.  INTRODUCTION………………………………………………....…1

II. ARGUMENT…………………………………………………...2

    A. Relator's Claims Are Time Barred………………..……………2

    B. Relator Cannot Establish Any Element Of His Claims Under The
        False Claims Act………………………………….………..……5

        1. *Relator Fails to Establish Any Element of His Claims Under*
            *31 U.S.C. § 3729(a)(1)(B)*……………………...……...6

        2. *Relator Fails to Prove Any Element of His Claims Under 31*
            *U.S.C. § 3729(a)(1)(A)*……………………………...…9

    C. Relator's Claims Under The CFCA Similarly Fail…...…………10

    D. Relator As A *Qui Tam* Plaintiff Must Possess Personal Knowledge
        Of Facts Supporting His Claims……………………………....11

    E. PLS Is Entitled To Attorneys Fees And Costs……………..…..12

III. CONCLUSION……………………………………..………12

# <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                                    **Page(s)**

*United States v. Marolf,*
    173 F.3d 1213 (9th Cir.1999) ……..……………………………….....3

*United States v. National Wholesalers*,
    236 F.2d 944, 950 (1956) …………………………….............................4

*United States v. Scan Health Plan*,
    2017 U.S. Dist. LEXIS 174311 (C.D. Cal. 2017) …….…………...…….…...4

*United States ex rel. Aflatooni v. Kitsap Physicians Serv.*,
    314 F.3d 995 (9th Cir. 2002) …………………...…………….…………...…6

*United States ex rel. Aflatooni, v. Kitsap Physicians Serv.*,
    163 F.3d 516 (9th Cir. 1999)...………………...………….……………... 12

*United States ex rel. Costa v. Baker & Taylor, Inc.*,
    1998 WL 230979 (N.D. Cal, 1998) …….…………………………….....3

*United States ex rel. Durkin v. County of San Diego,*
    2017 WL 3315784 (S.D. Cal. 2017) …….…………………….……..……...4

*United States ex rel. Green v. Northrop Corp.,*
    59 F.3d 953 (9th Cir. 1995) ……………………………………....................11

*///*

*///*

*United States ex rel. Hyatt v. Northrop Corp.*,

    91 F.3d 1211 (9th Cir. 1996)…………………………….......................3-5

*United States ex rel. Lee v. Corinthian Colleges*,

    2012 U.S. Dist. LEXIS 192076 (C.D. Cal. 2012) …………….........................4

*United States ex rel. Saaf v. Lehman Brothers*,

    123 F.3d 1307, 1308 (9th Cir.1997) ……..…………………….....…….3

**STATUTES**

28 U.S.C. § 1927...................................................................................12

31 U.S.C. §3729 *et seq*...…......................................................................2-6, 11

31 U.S.C. §3729(a)(1)(A)……………………………….....…………….9

31 U.S.C. §3729(a)(1)(B)…………………….....…………………..…….6, 9

31 U.S.C. § 3731(b)..……………………….…………………..………2-4

31 U.S.C. § 3731(b)(1)………………………………….....…….…3

31 U.S.C. § 3731(b)(2)…………………………………..…...…….3-5

Cal. Gov. Code § 12650 *et seq*................................................................10

/// 
///

1

**RULES**

2

3

Fed. R. Civ. P. 26……………………………………………………………….……..…2

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Not having any evidentiary support for his claims, Relator loads up his Opposition with immaterial and improper exhibits, declarations and other documents so as to raise confusion and create the impression of genuine disputes of material facts. In this quest to compensate for his utter lack of evidence, Relator resorted to introducing previously undisclosed and unauthenticated documents, as well as last-minute declarations by people previously not identified or whose contact information Relator failed to disclose, testifying to matters that are either wholly irrelevant, misrepresent and contradict facts supported by hard evidence, or are otherwise improper under both discovery and evidentiary rules.

First, concurrent with his Opposition, Relator has filed declarations by five previously unidentified individuals–Janice Vanover, Martha Pittman, Ramona Lyons, Don Mays, and Daniel Rodriguez–claiming to be patients of Damar Medical Industries ("Damar"), a customer of PLS. Not only are these individuals identified *for the first time* in the Opposition, whom PLS had no prior knowledge of (Supplemental Declaration of Edgar Martirosyan, "Martirosyan Sup. Decl." ¶ 6), but their testimony does nothing to create genuine disputes over any element of Relator's claims.  These declarations make no mention of PLS or its products.  Nor do they make any concrete claims that Medicare was in fact billed and covered the cost of any products received from Damar. All these nearly identical declarations accomplish is add volume to Relator's Opposition without content.

Second, Relator attached to his Opposition a declaration by an individual named Demetri Yagdjis ("Yagdjis"). While Relator previously named Yagdjis in response to Special Interrogatories, Relator claimed that Yagdjis's "address and phone number [are] unknown" in response to PLS's request for same. (Martirosyan Sup. Decl. ¶ 4; Exhibit 32). Relator neither supplemented his response to PLS's discovery requests to provide the requested contact information for Yagdjis nor

included the same in his Supplemental Disclosures (served on the discovery cut-off date), as required under Rule 26. (Martirosyan Sup. Decl. ¶ 5; Exhibit 33).

Moreover, not only does Yagdjis's declaration come as a surprise to PLS, provided that Relator deliberately withheld his contact information in discovery, but it is full of patently false statements lacking foundation, offering improper lay testimony, or otherwise violating even the most basic discovery and evidence rules. Yet, not having evidence to point to, Relator cites to and heavily relies on Yagdjis in his Opposition in a desperate attempt to defeat the MSJ.

Third, the Opposition also includes a declaration by Relator, which attempts to soften the blow of his prior detrimental admissions by contradicting the facts he has conceded on not one, but multiple occasions. For instance, in the face of overwhelming evidence, including Relator's repeated statements in response to written discovery and deposition questions that he was aware of the alleged fraud in 2009 or 2010, he now declares that his "suspicions" were "confirmed" in or around 2011 or 2012. This declaration, too, is a last-ditch and immaterial remedial measure, since Relator's case would be time-barred, anyway. Also, similar to Yagdjis, Relator, by way of declaration, attempts to introduce improper expert testimony on matters clearly outside his knowledge, expertise and role in this case.

Fourth, several documents lacking foundation are also improperly brought in *for the first time* with Relator's Opposition to the MSJ.  (e.g., Exhibits 29 and 30). (Martirosyan Sup. Decl. ¶ 10). Lastly, to make matters confusing for both PLS and the Court and present statements as facts without having supporting evidence for same, Relator fails to cite to evidence in any part of his argument in the Opposition.

## II.   ARGUMENT

### A. <u>Relator's Claims Are Time Barred</u>

PLS's MSJ starts out by pointing to the expired statute of limitations on Relator's False Claims Act ("FCA") claims pursuant to 31 U.S.C. §3731(b) and the Ninth Circuit's holding that "a civil action under the [FCA] brought by a *qui tam*

plaintiff must be commenced no more than (1) six years after the date on which the FCA violation is committed or (2) three years after the date when facts material to the right of action are known or reasonably should have been known by the qui tam plaintiff, whichever occurs last." *United States ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211, 1218 (9th Cir. 1996). Unable to challenge the controlling authority of the Ninth Circuit or deny the concrete evidence of Relator's longtime knowledge of the alleged violations (i.e. time-stamped video recordings and admissions in those video recordings) to overcome the hurdle of the three-year statute of limitations under 31 U.S.C. §3731(b)(2), Relator conveniently opted to only address the six-year statute of limitations under 31 U.S.C. §3731(b)(1) and push its deficient response towards the end of his Opposition. Yet, ironically, in his flawed address of the time bar, which offers no opposition to the Ninth Circuit's ruling in *Hyatt* or to the overwhelming evidence that Relator was aware of his claims since 2009, Relator proclaims, without more, that PLS's argument that the action is time-barred lacks "factual or legal basis." (Opposition; 24:18).

Relator, however, cannot just simply ignore the Ninth Circuit's explicit ruling in *Hyatt* that "***the three-year extension of the statute of limitations begins to run once qui tam plaintiff knows or reasonably should have known the facts material to his right of action.***" *Hyatt,* 91 F.3d at 1217-18 (Emphasis added).[1] Indeed, *Hyatt* has been followed in several subsequent Ninth Circuit cases, as well as in the distinct courts of California. *See e.g. United States ex rel. Saaf v. Lehman Brothers,* 123 F.3d 1307, 1308 (9th Cir.1997); *United States v. Marolf*, 173 F.3d 1213 (9th Cir.1999); *United States ex rel. Costa v. Baker & Taylor, Inc.*, 1998 WL

---

[1] The Appellate Court in *Hyatt* backs this holding and its interpretation of Section §3731(b) with thorough analysis covering from Congressional intent to public policy considerations, such as interference with law enforcement and the threat of continuing fraud and mounting losses that will result if a *qui tam* plaintiff waits ten years to bring an action for violations of the FCA. *Hyatt,* 91 F.3d at 1218.

230979 (N.D. Cal, 1998); *United States ex rel. Durkin v. County of San Diego,* 2017 WL 3315784 (S.D. Cal. 2017). Yet, Relator appears to think he falls outside the jurisdictional confines of the Ninth Circuit and simply chooses to ignore *Hyatt*.

With respect to the six-year statute of limitations, Relator asserts that the "statute of limitations begins to run … upon submission of a false claim" and, in support, cites to *United States v. National Wholesalers*, 236 F.2d 944, 950 (1956). (Opposition; 24:3-6). This, however, is a misstatement not backed by the sentence Relator points to in the Court's holding. In fact, the Court in *National* does not discuss or even mention statute of limitations throughout its holding in said case.

Relator next claims that "[w]hen an action is brought based on multiple false claims, the statute of limitations for each claim runs from the date each claim accrued," and, in support, cites to *United States v. Scan Health Plan*, 2017 U.S. Dist. LEXIS 174311, *17-18 (C.D. Cal. 2017). (Opposition; 23:22-27). Relator's reference, however, is to a dictum in *Scan*, which he takes out of context and paraphrases to support his far reaching interpretation of the six-year bar. Specifically, *Scan* does not discuss the six-year statute of limitations with respect to submission of false claims; instead, the Court analyzes claims barred by the FCA's ten-year statute of repose under 31 U.S.C. § 3731(b)(2) within the context of amendments of complaints and the relation back doctrine. *Scan Health Plan*, 2017 U.S. Dist. LEXIS 174311 at 17-18. Moreover, what the Court in *Scan* does discuss, which Relator conveniently fails to reflect, is the very holding in *Hyatt,* imposing subsection (2) of the two-tiered statute of limitations under 31 U.S.C. §3731(b) upon *qui tam* plaintiffs.[2] *Id.* at 15-16.

As such, Relator's claims are also time-barred under the six-year statute of

---

[2]Relator similarly ignores the Courts' citation to *Hyatt*, for the *three-year statute of limitation imposed on qui tam plaintiffs*, in *United States ex rel. Lee v. Corinthian Colleges*, 2012 U.S. Dist. LEXIS 192076, *13-14 (C.D. Cal. 2012) and *Durkin*, 2017 WL 3315784 at *10, the very cases he cites to. (Opposition 24:2-8).

limitations because he brought his Complaint over six years after the alleged fraud started to take place at PLS. However, even if the six-year statute of limitations attaches to and carries over with each instance or submission of a false claim as Relator contends, that does not preclude *qui tam* plaintiffs from the added benefits and restrictions of the tolling provisions of the FCA under 31 U.S.C. §3731(b)(2).[3]

Alternatively, following Relator's flawed logic and not tolling the statute of limitations based on his knowledge leads to the absurd conclusion that *qui tam* plaintiffs can essentially know of an ongoing fraud for decades and sit on that information for as long as they wish or until the fraud grows to sizable proportions, respectively increasing Relator's share in the government's recovery, before filing an FCA action. This "would permit qui tam relators to control the length of their own limitations period by withholding their allegations until they are prepared to sue" which "would frustrate the purpose of a limitations period and the purposes of the [FCA]." *Hyatt*, 91 F.3d at 1218.

As further delineated in *Hyatt* "[relator's] duty to act must be triggered by his own knowledge," as this "comports with the legislative scheme of the Act, the purposes of the statutes of limitations and the FCA tolling provisions." *Id.* As such, Relator's duty to bring his action was triggered by his own knowledge of the alleged fraud acquired in 2009 or (based on his declaration contradicting his prior testimony, filed with the Opposition) in 2011, the latest. Since Relator did not file his Complaint until May of 2016, his claims under the FCA are now time-barred.

**B. Relator Cannot Establish Any Element Of His Claims Under The False Claims Act**

The MSJ breaks down Relator's two claims under the FCA into their respective elements and argues them accordingly, starting with perhaps the most

---

[3] The *Hyatt* Court held that the *qui tam* plaintiff "cannot have it both ways" and "[i]f he accepts the benefits of the tolling statute, he must be subject to its restrictions." *Hyatt*, 91 F.3d at 1218.

important element of an FCA action- an "**Actual False Claim**." *See, e.g.*, *United States ex rel. Aflatooni v. Kitsap Physicians Serv.*, 314 F.3d 995, 1002 (9th Cir. 2002) ("an actual false claim is 'the *sine qua non* of a[n FCA] violation.'"). In over a five-page discussion, the MSJ points to Relator's failure to provide evidence (or even knowledge) of any *actual claims* presented to the government, let alone show its falsity, and Relator's failure to substantiate the alleged "fraudulent manufacturing process" of PLS that serves as basis to his claims. (MSJ; 11:17-16).

Unable to challenge the laws of this jurisdiction or address the severe factual deficiencies of his claims, Relator sidesteps this argument and his inability to show any *actual false claims* and instead starts off by introducing new theories (i.e. false certification theory not stated in the Complaint nor previously discussed in this case) and interpretations on what the term "false" means. (Opposition; 12:9-13:10). From there, Relator proceeds to discuss the concept of "false" only with respect to "false records or statements" or "false representations" PLS purportedly made to its customers, and not the "*claim*" component of the alleged FCA violations, which he must necessarily prove was "false or fraudulent." (Opposition; 13:11-23).

Specifically, *not once* throughout his Opposition does Relator identify or refer to any "actual false claim" presented to the government, or even discuss the concept of such "claims" within the factual context of this case. Nor does Relator address the lack of evidence supporting his claims that PLS's custom diabetic insoles were "fraudulently" made to even make the remaining elements of his claims relevant. Rather, based on nothing more than the generalized accusations raised in Relator's and Yagdjis's improper declarations, Relator assumes these as facts and passes over them to discuss other elements of his FCA claims.

### 1. *Relator Fails to Establish Any Element of His Claims Under 31 U.S.C. § 3729(a)(1)(B)*

Relator first addresses the "false statements" element under 31 U.S.C. § 3729(a)(1)(B), arguing that PLS has made, or caused to be made, false records or

statements regarding the custom nature of its products by marketing and billing its insoles as custom diabetic insoles (A5513). (Opposition; 13:19-23).

It is no secret that custom diabetic insoles are one type among the many different products PLS manufactures. Nor is PLS denying that it is assigned the HCPCS code A5513 for Trilaminate Custom Molded Inserts, which may appear in some of PLS's documents, including advertising material and invoices. What Relator fails to explain is how the appearance of this "A" code in PLS general advertisements or item number "5513" in some of its invoices constitutes a "false statement," absent a showing that a particular product for which the representation was made was in fact not compliant with the requirements of said code.

In jumping into this argument, Relator merely *assumes* that PLS's custom products are not custom made. Indeed, Relator's Opposition *fails to point to any evidence* (for even one specific insert) supporting his assumption that PLS made and represented said product as compliant with A5513, when in fact it was not. To the extent Relator relies on his own declaration analyzing the content of PLS's NCD files to support his claims, Relator is not an expert qualified to testify to such matters and his testimony to same is completely inappropriate, as well as incorrect.

As for Relator's reference to "3D scanning technology," which Relator claims PLS advertises but rarely uses, it is misstated and wholly irrelevant. First, Relator takes PLS's statement that it rarely uses 3D scanning technology when compared to other methods of taking foot impressions (i.e. foam box or casting tape) and introduces it as a fact that PLS seldom uses 3D technology to convert 2D scans into 3D. Moreover, Relator's discussion of the 3D technology is a red herring aimed at taking the focus off of what is really at issue here – false claims.

With respect to the "knowledge" element of his false records claim, Relator again starts off with the unproven assumption of fraud, then proceeds to make a circular argument that PLS knows its statements are false because it knows. (Opposition; 16:9-21). In support of this, Relator appears to again rely *only* on his

self-serving declaration and Yagdjis, to bring in utterly false statements through improper testimony, which, as discussed at length in PLS's Evidentiary Objections, is in violation of discovery and evidence rules and highly prejudicial to PLS.

Relator's argument for the "material" element of his false records claim is similarly based on its unproven assumption of fraud with respect to the making of PLS's inserts, utter misstatements of PLS's testimony, Relator's uncorroborated theory of "false" representations, and unsubstantiated assumptions of claims presented to and payment made by the government.  Without a shred of evidence, Relator simply restates the law: "false representations that an insert has been custom molded to a patient's foot when it was not is directly related to the government's loss when it pays a fraudulent claim." (Opposition; 17:9-20). Relator neglects to point out one glaring problem; it hasn't produced any evidence to support its claims against PLS.  And since all the other elements of Relator's claims fall for lack of evidence, the discussion of "material" is futile.

Lastly, while Relator acknowledges that "an actual claim" is necessary for his false claims action and pretends to address that element, he in fact does not, and instead embarks on an unrelated discussion of what constitutes "reliance" by PLS's customers on PLS's alleged misrepresentations in their requests for payment through Medicare. (Opposition; 17:21-18:28). Then Relator simply assumes that PLS's customers made requests for payment to Medicare, and without more concludes that on numerous occasions Medicare has in fact covered the costs of PLS's products. (Opposition; 18:28-19:7).

Relator's conclusion, however, is not only unsupported by the evidence in this case but fails to show "falsity" of any "actual claims" purportedly covered by Medicare. Specifically, Relator fails to show that (1) any of PLS's products was not "compliant" (2) which PLS represented as "compliant," constituting a "false statement" that links to(3) and *actual* false or fraudulent claim for payment presented to the government, (4) on which the government paid.

## 2. *Relator Fails to Prove Any Element of His Claims Under 31 U.S.C. § 3729(a)(1)(A)*

With respect to his claims under 31 U.S.C. § 3729(A)(1)(A), Relator makes two assertions: (1) that PLS has caused its customers to present false claims for reimbursement, and (2) that PLS had knowledge that any submission of claims for payment based on non-custom insoles would constitute a false or fraudulent claim. This section of Relator's argument is nearly an exact repetition of the statements made with respect to his claims under 31 U.S.C. § 3729(a)(1)(B). That is, Relator again starts off with the assumption that PLS's products are not compliant with A5513, which it misrepresented as compliant, causing its customers to seek government funds for same. Then, instead of focusing on substantiating this statement and addressing the deficiencies of his claims (per the MSJ), Relator misstates the arguments made in the MSJ, shifting his argument in that direction.

Specifically, Relator falsely asserts that the MSJ is based on a belief that because PLS was paid directly by its customers, it cannot be liable. Contrary to Relator's misrepresentation, what the MSJ does state is that "Relator has failed to allege or provide evidence of any 'reimbursement requests' made by PLS to the purported recipients of federal funds [being PLS's customers]" or "support his allegations that PLS was paid by its customers out of government funds." (MSJ; 14:6-8, 13-14). Moreover, as further detailed in the MSJ, "Relator's responses to specific requests for facts supporting the contention that PLS's customers pay PLS after billing and using money received from the government only affirms his empty basis for this assumption." (MSJ; 14:15-17). Relator's misstatement of this MSJ argument and failure to address same only further affirms the truth of the statements made therein.

Lastly Relator's argument that "[PLS's] contention that it is unaware of which specific clinic submitted claims to the government does not excuse it from liability, as [PLS] can identify each and every claim submitted if it simply inquired

of its customers" is absurd, at best. (Opposition; 20:26-28, 21:1). ***Indeed, this is clearly an admission on the part of Relator of having no evidence to support his claims***. Relator is essence trying to shift his burden of proving that actual claims were submitted to the government onto PLS.

## C. Relator's Claims Under The CFCA Similarly Fail

At the conference of counsel held on April 2, 2018, pertaining to PLS's dispositive motions, including the MSJ, Relator's counsel acknowledged the flaws in and agreed to voluntarily dismiss Relator's CFCA claims in exchange for PLS's waiver of costs with respect to said claims. The parties so stipulated and Relator's counsel confirmed so just two days later in writing: "the parties have stipulated that the Second Cause of Action under the California False Claims Act *is dismissed* for a waiver of costs." (Martirosyan Sup. Decl. ¶ 9, Exhibit 36). (Emphasis added.)

Relator now argues that his claims under the CFCA survive. Specifically, Relator claims that he "has shown that false claims are presented to state government funding sources in the same way as they are presented to federal sources, using the same HCSPC billing code." (Opposition; 22:1-3).

As an initial matter, Relator merely states, instead of pointing to a single piece of evidence of, the existence of "false claims … presented to state government" the same way he has failed to show evidence of "false claims … presented to federal sources." Moreover, as pointed to in the MSJ, a reference to the HCSPC billing code (including A5513) does nothing to support Relator's CFCA claims. HCSPC codes are Medicare billing codes and Medicare is a federally operated program. As such, it does not and cannot support any "false claims" under the CFCA as it does not involve any "officer, employee or agent of the state." Furthermore, to the extent Relator uses the testimony of Yagdjis in a desperate attempt to save his claims, not only do Yagdjis's statements fail to establish grounds for Relator's CFCA claims but any reference to and use of his declaration, as discussed at length in PLS's Evidentiary Objections, is improper.

**D. Relator As A *Qui Tam* Plaintiff Must Possess Personal Knowledge Of Facts Supporting His Claims**

Relator turns PLS's argument that Relator does not have knowledge of essential components of its claims into a debate over the public disclosure bar and the original source exception. (Opposition; 22:11-23:16).  He claims that PLS misses the point because the Relator's action has not been publicly disclosed and Relator, having gained firsthand knowledge of the fraud through his employment with PLS, has been the only source of information. (Opposition; 23:7-15).

Relator, however, is the one that misses the point of PLS's argument. Even absent a public disclosure, as a "whistleblower," a *qui tam* plaintiff ought to have basis for his claims derived from his own personal knowledge, and not mere unsubstantiated beliefs and speculations. The alternative theory to this would flood the courts by plaintiffs not privy to a fraud on the government, bringing claims under the FCA in hopes of substantiating them through the discovery process. As the Ninth Circuit held, the *qui tam* provisions of the FCA were intended to "set up incentive to supplement government enforcement" of the Act by encourag[ing] insiders privy to a fraud on the government to blows the whistle on the crime." *United States ex rel. Green v. Northrop Corp.,* 59 F.3d 953, 963 (9th Cir. 1995).

Here, Relator admits that PLS did not bill to the government and that he is not privy to the billing practices of PLS's customers.  As such, Relator's "firsthand knowledge" acquired through his employment at PLS did not and could not have exposed him to the presentation of any "actual claims" to the government, let alone make him an "insider" privy to a "false or fraudulent claims" for payment presented to the government. (Opposition; 17:23-25; 23:12-15); *See Green*, 59 F.3d at 963. Relying on the improper and prejudicial declaration of a previously undisclosed individual –Yagdjis– does not establish Relator's knowledge of same, even if we are to assume arguendo Yagdis had such knowledge himself. As such, Relator lacks the necessary "true knowledge" of alleged wrongdoing to serve as a

*qui tam* plaintiff on the claims he has brought. *United States ex rel. Aflatooni v. Kitsap Physicians Servs.*, 163 F.3d 516, 526 (9th Cir. 1999).

### E. **PLS Is Entitled To Attorneys Fees And Costs**

Relator argues that an award of fees and expenses is inappropriate in this case because Relator "has ample evidence of [PLS's] knowing noncompliance with Medicare requirement for custom diabetic inserts, and its knowing marketing, certifying, and invoicing of clinics for products that in no way match the stated description" as well as "evidence that clinics relied on [PLS's] fraudulent representations to present claims for government funds." (Opposition; 25:23-27).

As the MSJ and this Reply make abundantly clear, this is simply not true. Such evidence was neither produced in discovery nor identified for purposes of summary judgment. Thus, not only should Relator's claims not survive to trial, but he deserves to be sanctioned for dragging his unsubstantiated case to this stage of the litigation only to "punish" his cousin, Ambartsum Kumuryan.

As such, Relator is subject to any and all sanctions and costs the Court may deem appropriate. In light of the Court's April 11, 2018 Order of decision on PLS's Ex Parte Application, however, PLS withdraws its request for sanctions against Relator's counsel pursuant to 28 U.S.C. § 1927, and limits its request for sanctions to the bases and amounts initially identified in PLS's March 26, 2018 filed (and subsequently stricken) Motions; that is, $58,500.00.

### III. **CONCLUSION**

For the reasons stated above, PLS's Motion for Summary Judgment should be granted in its entirety, along with appropriate attorney's fees and costs.

Dated: April 30, 2018                **MARTIROSYAN P.C.**


                                     */s/ Edgar Martirosyan*
                                     Edgar Martirosyan, Esq.
                                     Attorney for Defendant, PLS DIABETIC
                                     SHOE COMPANY

**<u>CERTIFICATE OF SERVICE</u>**

**United States of America ex rel. Arthur Afionyan, and State of California ex rel. Afionyan**

**v. Pedorthic Lab Specialist Custom Shoe Co.**

**Case No.:** CV16-03268-JFW (KSx)

I, the undersigned, hereby certify that on April 30, 2018, a copy of the foregoing PLS DIABETIC SHOE COMPANY'S REPLY IN SUPPORT OF NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, along with supporting documents, were filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's EM/ECF System.

By:    <u>/s/ *Edgar Martirosyan*</u>

Edgar Martirosyan, Esq.